[S.F. No. 22716. In Bank. July 30, 1970.]

NATHAN KEIZER et al., Plaintiffs and Respondents, v.
LEONARD ADAMS, as Supervising Building Inspector, etc., et al.,
Defendants and Appellants.

## Counsel

Henry J. Faitz and Howard E. Gawthorp, County Counsel, Jerry W. Bartholow, James L. Rankin, Hugh S. Johnston, Dwight L. Herr and Merel P. Glaubiger, Assistant County Counsel, for Defendants and Appellants.

Nicholas G. Schoonbrood for Plaintiffs and Respondents.

## Opinion

**BURKE, J.**—In this building permit controversy, a hearing was granted by this court, after decision by the Court of Appeal, First Appellate District, Division Three, for the purpose of giving further study to the problems presented. After such study we have concluded that the opinion of the Court of Appeal, prepared by Presiding Justice Draper, correctly treats and disposes of the issues involved, and with certain further comments and additions pertinent to contentions urged, it is adopted as and for the opinion of this court. Such opinion (with appropriate deletions and additions as indicated) is as follows:[1]

---

[1]Brackets together, in this manner [ ], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted. (*McDonnell Douglas Corp.* v. *Franchise Tax Board* (1968) 69 Cal.2d 506, 508, fn. 1 [72 Cal.Rptr. 465, 446 P.2d 313]; *Smith* v. *Anderson* (1967) 67 Cal.2d 635, 637, fn. 1 [63 Cal.Rptr. 391, 433 P.2d 183].)

The Subdivision Map Act [in pertinent part] defines a subdivision as land divided into five or more parcels for purpose of sale or lease (Bus. & Prof. Code, § 11535). It requires a subdivider to file, secure approval of, and record a subdivision map (Bus. & Prof. Code, § 11550 et seq.). It makes it unlawful for any person to offer or contract to sell or lease any part of a subdivision without compliance with the act (Bus. & Prof. Code, § 11538) and provides penalties of fine or imprisonment for violation (Bus. & Prof. Code, § 11541). The question on this appeal is whether a wholly innocent purchaser for value may be denied a building permit upon a lot sold by the grantor in violation of this act.

On February 24, 1966, one Fullington owned a tract of 20 acres. Between that date and February 27, 1967, he sold 10 parcels from this tract. One of these sales was to plaintiffs-respondents Keizer, by deed recorded October 18, 1966.[2] Application for a building permit for a one-family residence on the property was made on behalf of the Keizers February 8, 1967. It was denied by appellant county officials March 29, 1967, because the grantor, by subdividing his land into more than four parcels without filing a subdivision map, had violated the Subdivision Map Act and like provisions of a Santa Cruz County ordinance. Alternative writ of mandate issued on petitioners' application. At trial, the case was submitted upon an agreed statement of facts and other evidence. The trial court issued peremptory writ requiring appellant officials to consider petitioners' application without reference to the subdivision map requirement of statute and of county ordinance. The officials appeal.

Although it is undisputed that petitioners had neither actual nor constructive notice of other sales by the grantor, appellants argue that the salutary purpose of the Subdivision Map Act will be promoted by placing the burden of compliance upon the purchasers, however innocent. They point out the heavy burden upon the county, with its staff of employees, in checking each of the many recordings in Santa Cruz County. Somewhat myopically, however, they fail to suggest any feasible method by which an individual purchaser could obtain the same information.[3]

The Subdivision Map Act clearly is designed to restrict activities of the subdivider—the one "who causes land to be divided into a subdivision" (§ 11508). Its prohibition (§ 11538) and its penal sanctions (§ 11541) run only to the affirmative act of selling or offering for sale, and not to purchase. The act carefully provides that a deed made contrary to its

[2Plaintiffs' deed was actually issued to them by a third party in whose name a portion of Fullington's tract had been placed for his benefit under a holding agreement. However, in this opinion "grantor" refers to Fullington.]

[3The difficulty to the purchaser would appear especially acute when, as here, his deed is issued by a third party. (See fn. 2, *ante*.)]

terms is voidable "at the sole option of the grantee" (§ 11540). The restraint here exercised by the Legislature is emphasized by the provision that, while ordinances may cover the same subject matter, "the validity of any conveyance" shall not be affected except "to the extent and in the same manner provided in Section 11540." (§ 11540.1.) The rights of the city or county are recognized in the grant of the remedy of injunction (§ 11542).

■ The act does not require the innocent purchaser to suffer for a violation by his grantor, of which he has neither knowledge nor means of discovery (*Munns* v. *Stenman,* 152 Cal.App.2d 543, 554-556 [314 P.2d 67]).

■ Nor does the ordinance, as it stood when the building application was denied, suggest such an effect. Thus, absent some other deficiency in respondents' application, appellant officials were required to issue the permit. This rule, of course, cannot be used as a cloak for the conniving purchaser (*Pratt* v. *Adams,* 229 Cal.App.2d 602 [40 Cal.Rptr. 505]).

[The suggestion that the only remedies of plaintiff-purchasers are to either join with other purchasers of lots in the illegal subdivision and obtain approval by the county of a subdivision map, or else to exercise their statutory right to void their purchase (§ 11540, Bus. & Prof. Code) is untenable. No procedure is suggested, and we are aware of none, by which plaintiffs could compel the other purchasers to join in seeking to correct the illegal acts of their predecessors in interest. (See *Munns* v. *Stenman, supra,* 152 Cal.App. 2d 543, 552.) With respect to the right to void the transaction, section 11540 specifies in pertinent part that a deed made contrary to the act is voidable at grantee's option "within one year after the date of execution of the deed," and, further, that the deed of conveyance "is binding upon any assignee or transferee of the grantee." Thus, if a purchaser of a lot from an illegal subdivider did not seek a building permit within one year after his purchase he might well not discover within that time that facts existed giving him the right to void the purchase, and, additionally, in case he resold the lot the second purchaser is by the express terms of the statute denied any voiding rights whatever.]

■ Appellants point to an amendment of the ordinance, purporting to authorize denial of a building permit if there has been any violation of the subdivision map ordinance, without reference to any knowledge by the purchaser-applicant. This amendment, however, was not effective until after denial of respondents' application. Thus it cannot, in any case, support that denial (*McCombs* v. *Larson,* 176 Cal.App.2d 105 [1 Cal.Rptr. 140]),

and we do not consider validity of the amendment. We do note, however, that its strict application could lead to this odd result: the grantee of the first parcel sold, even though his purchase was completely valid when made, could be barred from building if four later sales were made from the same parcel before he sought a building permit.

The writ granted below merely requires consideration of the building permit application "without regard" to the Subdivision Map Act or ordinance. Requirements of zoning laws, building codes, lot-size limitations, and [ ] [other applicable ordinances of the county are not affected.

■ [Additionally, we are persuaded that it is equitable that the county be authorized to require that plaintiffs, as a condition to the issuance of a building permit, comply with such reasonable conditions as the county may require in the public interest and for the protection of plaintiffs' property and of neighboring property, and perform or agree to perform or construct such reasonable improvements with respect to plaintiffs' lot as could have been required of plaintiffs' grantor as a condition of subdividing the latter's tract of land under the provisions of the Subdivision Map Act and the county subdivision ordinance at the time of the sale to plaintiffs of their lot.

[The judgment is modified to so provide, and as so modified is affirmed. Each side is to bear its own costs on appeal.]

Wright, C. J., McComb, J., Peters, J., and Tobriner, J., concurred.

**MOSK, J.**—I dissent.

The salutary purposes of the Subdivision Map Act and the ordinances passed in conformity with it were succinctly described in *Pratt* v. *Adams* (1964) 229 Cal.App.2d 602, 606 [40 Cal.Rptr. 505]: "to regulate and control the design and improvement of subdivisions, with proper consideration for their relation to adjoining areas (*Kelber* v. *City of Upland,* 155 Cal.App.2d 631, 638 [318 P.2d 561]; *Newport Building Corp.* v. *City of Santa Ana,* 210 Cal.App.2d 771, 776 [26 Cal.Rptr. 797]); to require subdivider to install streets (*Hoover* v. *County of Kern,* 118 Cal.App.2d 139, 142 [257 P.2d 492]; *Evola* v. *Wendt Constr. Co.,* 170 Cal.App.2d 21, 25 [338 P.2d 498]; *County of Kern* v. *Edgemont Development Co.,* 222 Cal. App.2d 874, 879 [35 Cal.Rptr. 629]; to require subdivider to install drains (*City of Buena Park* v. *Boyar,* 186 Cal.App.2d 61, 67 [8 Cal.Rptr. 674]); to prevent fraud and exploitation (10 Ops.Cal.Atty.Gen. 203, 204; 27 Ops.Cal.Atty.Gen. 66); and to protect both public and purchaser (38 Ops.Cal.Atty.Gen. 125, 128). (See Taylor, *Current Problems in California Subdivision Control,* 13 Hastings L.J. 344.)"

Mandamus is, of course, an equitable remedy. It cannot be employed to compel the performance of acts which are illegal or contrary to public

policy. (*Sutro Heights Land Co.* v. *Merced Irr. Dist.* (1931) 211 Cal. 670, 705 [296 P. 1088].) The results sought by petitioners, whether calculated or innocent, are illegal and contrary to public policy.

The building permit sought here will perpetuate violation of the Subdivision Map Act; it will apply to one of ten parcels carved out of a tract without compliance with the Subdivision Map Act, which requires approval of subdivisions consisting of more than four parcels. The act was adapted to the locale through a Santa Cruz County ordinance, a matter of public record after having been duly published and enacted by the governing agency of the county. Compliance with local subdivision ordinances is required by state law. (Bus. & Prof. Code, § 11565.)

It is settled that the owner of land may be denied permission to subdivide by sale, lease or contract until he complies with the statute pertaining to the filing and approval of a subdivision map. (Bus. & Prof. Code, § 11538.) It is equally well established that a purchaser of land who is demonstrably aware of the illegalities in the subdivision may be denied a permit to build on his property. (*Pratt* v. *Adams, supra,* 229 Cal.App.2d 602; *Cooper* v. *County of Los Angeles* (1946) 75 Cal.App.2d 75 [170 P.2d 49].) While a certain amount of sympathy is aroused for careless purchasers who neglect to investigate their grantor's compliance with the Subdivision Map Act, or for wholly innocent purchasers who may have been misled by their predecessor in interest, their failure to satisfy requirements of the Subdivision Map Act produces a deleterious effect upon the public no different than that caused by the malevolent or knowledgeable purchaser. In the comparable field of zoning laws strict enforcement has consistently been upheld regardless of the character of the current owner of the property. (See, e.g., *Roney* v. *Board of Supervisors* (1956) 138 Cal. App.2d 740 [292 P.2d 529].)

Article 3 of the Subdivision Map Act prescribes rights and remedies under the statute. Section 11540 provides that any deed of conveyance, sale or contract to sell made contrary to the provisions of that statute is voidable at the sole option of the grantee. This indicates that the Legislature contemplated the plight of innocent purchasers, but instead of carving out exceptions from requirements of statutory compliance, a remedy was provided by permitting them to declare the sale voidable. Even knowledge of the seller's failure to file maps does not prevent voiding the sale of the property. (*Longway* v. *Newbery* (1939) 13 Cal.2d 603 [91 P.2d 110]; *White* v. *Jacobs* (1928) 204 Cal. 334 [267 P. 1087].) The grantees also have the traditional remedy for fraud in the event the seller was the violator of the Subdivision Map Act and knowingly conveyed the property for the purpose of deliberate avoidance of the statute.

And, finally, as provided in Business and Professions Code section 11542, the subdivision map statutes do not bar "any legal, equitable, or summary remedy" to which any aggrieved municipality or any person may otherwise be entitled. This section clearly implies not only protection of the rights of an innocent purchaser against the seller, but also indicates a municipality loses none of its rights by virtue of sales of any nature made in violation of the statute.

The majority's reliance upon *Munns* v. *Stenman* (1957) 152 Cal.App. 2d 543 [314 P.2d 67], is misplaced. The plaintiff in *Munns* was an innocent purchaser by virtue of the fact that he filed his application for a building permit prior to the date on which the zoning ordinance was adopted by the city council and signed by the mayor. In the instant case the Subdivision Map Act and ordinance were in effect prior to the original subdivision of the tract and the subsequent sale to these petitioners.

The majority appear to be concerned about the pragmatic effect of their decision, as they should be, for they indicate the county may still require the petitioners to comply with "reasonable conditions" as indicated by "the public interest and for the protection of plaintiffs' property and of neighboring property." While this apprehension for the orderly development of the community as a whole is commendable, it is an inadequate substitute for uniform compliance with the Subdivision Map Act.

The petitioners should not seek their remedy from the county and thus perpetuate deviation from the pattern of community development. They should look for redress to their predecessors in interest who were responsible for the violation of law.

The judgment granting a writ of mandate should be reversed.

Sullivan, J., concurred.