Filed 11/18/22  Pegues v. Charles Cobb Apartments CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARLIS PEGUES, | B313391 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV30464) |
| v. | |
| CHARLES COBB APARTMENTS L.P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

Daniels, Fine, Israel, Schonbuch & Lebovits and Bernadette Castillo Brouses, for Defendant and Appellant.

Onwaeze Law Group and Ogochukwu Victor Onwaeze for Plaintiff and Respondent.

————————————

Defendant Charles Cobb Apartments L.P. (Cobb) appeals from an order denying its special motion to strike pursuant to the anti-SLAPP statute, Code of Civil Procedure[1] section 425.16. We conclude Cobb failed to establish that the challenged claims against it arose from acts in furtherance of its rights of petition or free speech, and thus we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Unlawful detainer action

Cobb is the owner of an apartment building located at 521 South San Pedro Street in Los Angeles. Plaintiff Carlis Pegues (plaintiff) leased a unit in the apartment building (the unit) from Cobb from September 2018 until January 2020.

On May 22, 2019, Cobb filed an unlawful detainer action against plaintiff for failure to pay rent. On August 12, 2019, the parties stipulated to the entry of judgment, which provided that plaintiff would not pay past due rent, but would vacate the unit and remove her personal property by December 10, 2019.

Plaintiff did not vacate the unit by December 10, 2019. On January 9, 2020, the Los Angeles County Sheriff's Department served plaintiff with a writ of possession for the unit and carried out the eviction and judgment for possession.

### II.    Present action.

On August 11, 2020, plaintiff and Jeffrey Scott Davis[2] filed a complaint against Cobb alleging that on about November 22,

---

[1]     All subsequent statutory references are to the Code of Civil Procedure.

[2]     Jeffrey Scott Davis is not a party to the appeal.

2

2019—that is, several weeks prior to the date specified in the stipulated judgment—Cobb entered the unit and locked plaintiff out for three days, giving rise to causes of action for forcible entry and forcible detainer (seventh and eighth causes of action). Separately, plaintiff and Davis alleged that the unit had not been maintained in a habitable condition, giving rise to causes of action for breach of contract, breach of the implied warranty of habitability, breach of the covenant of quiet enjoyment, violations of Civil Code section 1942.4, nuisance, and negligence (first through sixth causes of action).

## III.    Special motion to strike

On April 1, 2021, Cobb filed a special motion to strike the seventh and eighth causes of action for forcible entry and forcible detainer pursuant to the anti-SLAPP statute. As to the statute's first prong, Cobb asserted that the forcible entry/forcible detainer causes of action were subject to a special motion to strike because they arose from protected activity—namely, Cobb's pursuit of an unlawful detainer action against plaintiff. As to the second prong, Cobb asserted that plaintiff could not establish a likelihood of prevailing because the forcible entry claim required plaintiff to prove that Cobb forcibly entered the unit and removed plaintiff by force, threats, or menacing conduct, and the forcible detainer claim required plaintiff to prove that Cobb unlawfully held and kept possession of the unit by force or threats of violence and refused to surrender the property for more than five days. Cobb asserted that because it secured possession of the unit through lawful process—that is, through an unlawful detainer action—it could not be liable for forcible entry or forcible detainer.

3

In support of Cobb's special motion to strike, its custodian of records, Daniel Hernandez, declared that according to the documents in plaintiff's renter's file, Cobb had relied on its counsel to handle plaintiff's eviction. There was no information in plaintiff's file indicating that any Cobb personnel forcibly entered plaintiff's unit or prevented her from entering her unit in November 2019.

Plaintiff opposed the special motion to strike. She asserted that the seventh and eighth causes of action did not arise out of protected activity because the alleged November 2019 lockout was not pursuant to the unlawful detainer action. In any event, even if the alleged lockout was protected activity subject to a special motion to strike, plaintiff urged that her declaration established a probability of success on the merits. In that declaration, plaintiff stated that when she was absent from the unit on November 22, 2019, Cobb used a keycard to enter her unit without her consent and then rekeyed the lock so she could not reenter. When plaintiff tried to regain possession, Cobb would not allow her to enter the unit and instead called the police. As a result, plaintiff was locked out of her unit for several days.

In its reply, Cobb argued that plaintiff had not presented admissible evidence that she could prevail on her forcible entry or forcible detainer claims because she "did not identify the individual, or individuals, that allegedly entered and detained her from her unit for a few days starting on November 22, 2019, let alone prov[ide] admissible evidence that such individual(s) acted on behalf of Charles Cobb."

The trial court denied the special motion to strike. The court found that Cobb had met its burden to show that the

4

principal thrust, or gravamen, of the seventh and eighth causes of action was the prosecution of the unlawful detainer action, but plaintiff had made a prima facie showing that she would prevail on those causes of action because she presented evidence that while she was entitled to possession of the unit, Cobb locked her out without her consent and then called the police when she tried to regain possession.

Cobb timely appealed from the order denying the special motion to strike.

## DISCUSSION

### I.   Applicable law

"Enacted by the Legislature in 1992, the anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern.  (See § 425.16, subd. (a); *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619; *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)"  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.)  To that end, section 425.16, subdivision (b)(1) provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

An " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral

5

statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

The analysis of an anti-SLAPP motion involves two steps. "Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.) A claim arises from protected activity "when that activity underlies or forms the basis for the claim." (*Id.* at p. 1062.) In other words, " '[t]he only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e).' " (*Id.* at p. 1063, italics omitted.) If the defendant carries its burden to demonstrate that plaintiff's claims arise from protected activity, the plaintiff must then demonstrate its claims have at least " 'minimal merit.' " (*Wilson v. Cable News Network, Inc.*, *supra*, 7 Cal.5th at p. 884.)

6

An order granting or denying a special motion to strike is appealable.  (§ 425.16, subd. (i); § 904.1, subd. (a)(13).)  Our review is de novo.  (*Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1067.)

## II.  The causes of action for forcible entry and forcible detainer do not arise out of protected activity

Cobb contends that plaintiff's causes of action for forcible entry and forcible detainer are subject to the anti-SLAPP statute because they arose out of acts taken in furtherance of Cobb's right of petition—namely, its prosecution of an unlawful detainer action.  For the reasons that follow, Cobb's contention lacks merit.

As an initial matter, we address Cobb's assertion that we cannot consider the merits of the first prong of the anti-SLAPP analysis because plaintiff did not cross-appeal from the order denying the anti-SLAPP motion.  Not so.  Although as a general rule, respondents who fail to file a cross-appeal cannot claim error in connection with the opposing party's appeal, a limited exception to this rule is provided by section 906, which provides: "Upon an appeal . . . , the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . .  The respondent, or party in whose favor the judgment was given, may, *without appealing from such judgment*, request the reviewing court to and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken."  (Italics added.)  " ' "The purpose of

7

the statutory exception is to allow a respondent to assert a legal theory which may result in affirmance of the judgment.' [Citation.]" [Citation.]' (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1121.)" (*Khorsand v. Liberty Mutual Fire Ins. Co.* (2018) 20 Cal.App.5th 1028, 1034; see also *Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439 [section 906 permits a respondent, without appealing, to assert a legal theory " 'which may result in affirmance of the judgment.' "]; *California State Employees' Assn. v. State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7 [" 'Although it is the appellant's task to show error, there is a corresponding obligation on the part of the respondent to aid the appellate court in sustaining the judgment;' " thus, respondent may, without appealing, "assert a legal theory which may result in affirmance of the judgment."].)

In the present case, plaintiff does not seek to reverse the order denying the special motion to strike. Instead, she asks this court to *affirm* the order, urging that any error with regard to the second prong did not prejudice Cobb because its prong one claim failed as a matter of law. Plaintiff's contention thus comes within section 906's plain language and, as such, did not require her to appeal from the order.

The cases on which Cobb relies are distinguishable. Two of those cases considered whether appellants could assert claims on behalf of other parties who had not appealed, an issue that is not before us. (See *City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 678 [homeowner had standing to appeal on his own behalf as an aggrieved party, but lacked standing to appeal from any portion of the judgment affecting the mortgage holder, the bankruptcy trustee, or homeowner's wife]; *Estate of McDill* (1975) 14 Cal.3d 831, 840–841 [although appellant's sister

8

had not filed an appeal, the interests of appellant and her sister were " 'so interwoven' " that reversal as to appellant also required reversal as to her sister].)  The remaining cases held that respondent's claims of error were not cognizable on appeal because respondents sought to reverse, not to affirm, the judgments.  (See *Estate of Powell*, *supra*, 83 Cal.App.4th at p. 1439 [having failed to appeal from the judgment, party could not seek reversal of the judgment and entry of a new judgment more favorable to him]; *Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 665 [respondent who did not file his own appeal to challenge the trial court's order could not attack the sufficiency of the evidence to support it].)

Turning to the merits of the first prong of the anti-SLAPP statute, while it is undisputed that the prosecution of an unlawful detainer action is protected activity within the meaning of section 425.16 (*Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1286; *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281–282; *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1182, disapproved on other grounds in *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396), " ' "[t]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." ' [Citations.]  The pivotal question ' "is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." ' " (*Clark*, at p. 1287.)

Thus, for example, in *Clark v. Mazgani, supra*, 170 Cal.App.4th 1281, the Court of Appeal held that claims based on a landlord's actions were not subject to the anti-SLAPP statute even though the actions followed a tenant's eviction. There, a landlord evicted a tenant from a unit subject to a rent

9

control ordinance permitting eviction if the landlord intended to remove the unit from the rental market in order to free it for occupancy by a member of the landlord's immediate family. Months after the eviction, the tenant sued the landlord, alleging that the landlord's daughter never moved into the unit, but that the landlord instead kept the apartment unoccupied and performed renovations, with the goal of re-letting the unit to a new tenant for a higher monthly rent. (*Id.* at p. 1285.) The landlord filed an anti-SLAPP motion, urging that the tenant's complaint arose from the acts of filing and serving the eviction notice. The trial court agreed and granted the motion, but the Court of Appeal reversed. While it noted that the prosecution of an unlawful detainer action indisputably was protected activity within the meaning of section 425.16, it found that the tenant's complaint was not premised on the landlord's protected activities of initiating or prosecuting the unlawful detainer action, but on the landlord's removal of the apartment from the rental market and fraudulent eviction of the tenant for the purpose of installing a family member who never moved in. The court explained: "Contrary to her contentions, [landlord] was not sued for exercising constitutional rights. She was sued to compel compliance with the provisions of the [rent stabilization ordinance (RSO)]. [Tenant's] suit was unquestionably 'triggered by' [landlord's] statements and the documents she filed in connection with the unlawful detainer. But the suit is *not based on* those statements or filings. It is based on [the tenant's] claim that [the landlord] fraudulently invoked the family occupancy exemption of the RSO to effect [tenant's] eviction, and failed to fulfill her obligations under that ordinance to install her daughter in the apartment . . . . [Landlord's] eviction notices and

10

the unlawful detainer action are merely cited as evidence and background to illustrate [landlord's] subsequent violation of the RSO . . . . To paraphrase an observation in [another case], ' "[i]f we were to accept [landlord's] argument, then [she] could preclude any judicial review of [her] violation of the rent control law, no matter how egregious, by simply filing a SLAPP motion . . . ." ' as was done here. [Citation.] We, like the other courts that have considered the issue, remain ' "confident that the Legislature intended no such application of [the rent control laws]." ' " (*Id.* at pp. 1289–1290.)

Similarly, in *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, a landlord notified its tenants that it would remove its apartment building from the rental market. A tenant asserted she was disabled and invoked the 120-day period for finding alternate housing permitted to disabled tenants. The landlord subsequently had the tenant removed through an action for unlawful detainer. The Department of Fair Employment and Housing (DFEH) sued for disability discrimination, and the landlord moved to strike portions of the complaint as a SLAPP. The trial court denied the landlord's motion, and the Court of Appeal affirmed. While the appellate court assumed without deciding that the landlord's filing of notices of its intent to remove residential units from the rental market, its investigation and communications made necessary by the rent control removal process, and its filing and prosecuting of the unlawful detainer actions against the tenant constituted protected petitioning activity, "the communications and the actual eviction itself were not the acts attacked in DFEH's complaint. Instead, the allegations of wrongdoing in DFEH's complaint arose from

11

[landlord's] alleged acts of failing to accommodate [tenant's] disability." (*Id*. at p. 1284.)

The present case is analogous to *Clark* and *Alta Loma*. As in those cases, plaintiff did not sue Cobb for exercising its right to use the court system to evict her, but rather for allegedly locking plaintiff out of the unit in violation of the judgment of eviction. Thus, while the judgment of eviction provides context for the alleged lock-out, the forcible removal and forcible detainer claims are not *based on* the eviction. Indeed, those causes of action do not allege that plaintiff was evicted from the unit, and the evidence offered by Cobb in support of its special motion to strike suggests that Cobb could not lawfully evict plaintiff prior to December 11, 2019. The alleged November 2019 lockout pled in the forcible removal and forcible detainer causes of action, therefore, did not invoke the constitutional right of petition.

The cases Cobb cites are inapposite. In *Birkner v. Lam*, *supra*, 156 Cal.App.4th at pp. 281–282, the plaintiff's complaint was based on the defendant's alleged failure to rescind a notice to terminate the plaintiff's tenancy, which was a legal prerequisite for bringing an unlawful detainer action. In *Wallace v. McCubbin*, *supra*, 196 Cal.App.4th at pp. 1182–1186, the challenged causes of action were based on the service of a three-day notice to quit and filing of an unlawful detainer action. And in *Trapp v. Naiman* (2013) 218 Cal.App.4th 113, 120–121, the plaintiffs' claims against the attorney defendants were based on the defendants' representation of financial institutions in unlawful detainer actions. In each of these cases, therefore, the plaintiffs' causes of action alleged actions taken in furtherance of unlawful detainer actions. In the present case, in contrast, the

12

seventh and eighth causes of action are based solely on conduct allegedly taken *outside* the unlawful detainer actions.

We do not disagree, as Cobb suggests, that "communicative conduct made in connection with an official proceeding, prior to its commencement, fall within the gambit of protected activity," and that "a landlord's notice to quit and subsequent prosecution of an unlawful detainer action and eviction constitute protected activities." But those legal principles have no application here where, as we have said, the alleged tortious acts were not in furtherance of a lawful eviction.

Nor is the complaint subject to a special motion to strike because "Cobb has no record of" the alleged November 2019 lockout. If plaintiff cannot establish by substantial evidence that she was subject to a lockout by Cobb in November 2019, her causes of action for forcible removal and forcible detainer may be subject to summary adjudication or may result in a judgment for Cobb at trial. For purposes of a special motion to strike, however, the merits of plaintiff's claims are relevant only if those claims arise out of the constitutional rights of petition or free speech. Because defendant has not established that the forcible removal and forcible detainer claims implicate the rights of petition or speech, their substantive merit is not properly before us.[3]

For all the foregoing reasons, the trial court properly denied the special motion to strike.

---

[3] Having concluded that the forcible removal and forcible detainer causes of action are not subject to the anti-SLAPP statute, we need not consider whether plaintiff established a likelihood of prevailing.

13

## DISPOSITION

The order denying the special motion to strike is affirmed. Respondent is awarded her appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                        EDMON, P. J.

We concur:

            LAVIN, J.

            RICHARDSON (ANNE K.), J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14